## Freida Giger, a minor, v. Mary Busch, et al.

### Gen. No. 4,501.

1.  LAST WILL AND TESTAMENT—*when latent ambiguity exists in.*  A latent ambiguity exists when that which seems certain and without ambiguity on the face of the deed or instrument, is rendered uncertain and ambiguous by something outside thereof

2.  LAST WILL AND TESTAMENT—*parol evidence competent to remove latent ambiguity.*  When by a resort to extrinsic evidence a latent ambiguity is raised in the instrument, parol evidence is generally admissible to dissolve the same.

3.  LAST WILL AND TESTAMENT—*latent ambiguity in, dissolved.*  Where a testator makes his "legal heirs in Germany" his residuary legatees and it appears that all his heirs, except one, reside in Switzerland, and that such one resided in Germany without his knowledge, and that he did not entertain towards such one any special affection, the will should be construed as making his legal heirs wherever they reside his residuary legatees.

Bill to construe will. Appeal from the Circuit Court of Mercer County; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the April term, 1905. Affirmed. Opinion filed August 1, 1905.

FRANK M. CARNAHAN, guardian *ad litem*, and H. E. BURGESS, for appellant.

GEORGE W. WERTS, JR., and JOHN E. MARDOCK, BASSETT & CARLSTROM, and I. N. BASSETT, guardian *ad litem*, for appellees.

MR. PRESIDING JUSTICE VICKERS delivered the opinion of the court.

This is a bill filed by the executors to obtain a construction of the last will of Joseph Busch. The only expression in the will about which any doubt exists is found in the residuary clause and reads as follows: "My said executors shall collect all money on notes and mortgages owing to my estate, and together with the money derived from the sale of the above real estate and after paying all legal expenses and charges, divide and distribute all of my estate at that time as follows: to Lewis N. Disch, Two

Hundred Dollars, and all the balance to my legal heirs in Germany."

Apparently there is a latent ambiguity in the words describing the beneficiaries as being in Germany, which will appear from the following statement of extrinsic circumstances.

Jacob Busch was a native of the Canton of St. Galls, Switzerland. He came to the United States in 1854 and settled in Mercer county, Illinois, in 1860, where he lived until his death, which occurred April 10, 1902. He had a wife who survives him, but had no children. His heirs are his nephews and nieces and the children of deceased nephews and nieces, all of whom, except one, reside in Switzerland in or near the Canton of St. Galls. The parents of Joseph Busch resided all their lives in Switzerland and died there, his father in 1851 and his mother in 1857. None of the family had ever resided in the German Empire at any time within the recollection of the oldest survivors, except Freida Giger, the appellant herein, of whom the following account is given :

Freida Giger is a daughter of Joseph Giger; Joseph was a nephew of Joseph Busch. Freida was born in 1892 and was the youngest child of a large family. She and a brother two years older than herself, were placed in an orphans asylum in the Canton of St. Galls in 1894. In 1896 Mr. Sonderer, a citizen of Freudenstadt, Wurtemberg, Germany, by consent and arrangement with the superintendent of the poor, took the child Freida to his home in Germany to rear her in his family. He kept her until August, 1897, when Mr. Sonderer, having decided to emigrate to the United States, left the child with Gottfried O. Nauhardt, a citizen of Leipsic, Germany, who took her into his family as his foster child, where she was at the date of the making the will and the death of Joseph Busch. Freida Giger has a guardian who resides in the Canton of St. Galls.

In 1895 and again in 1898, Joseph Busch visited his relatives in Switzerland and on each occasion he made a present

of 100 francs to each of his relatives; the shares of Freida and others under age were left for them with a custodian in Switzerland. While on the return from his last visit, Joseph Busch expressed his intention of making a will and giving everything to his wife and at her death he wanted all sent to his relatives to be equally divided among them. This conversation was had with Mr. Looser, who is also a native of Switzerland and came to the United States at the same time Busch came. He is one of the executors of the will appointed by Busch. Mr. Looser also testifies that he visited Joseph Busch in his last illness, and that the deceased told him he had made a will and handed the will to Looser to read. Mr. Looser called his attention to the use of the words "in Germany," and told him he should correct that and say "in Switzerland," to which he replied, "It is no difference, it is all Deutschland, it is all the same."

It is also shown that while the Canton of St. Galls is within the territorial limits of Switzerland, it is settled by people who speak the German language and that German habits and customs prevail there.

Under these facts the trial court entered a decree construing the will to include all the heirs of Joseph Busch residing either in Germany, Switzerland, Austria or Prussia. Freida Giger, who by her guardian *ad litem* claims all the residuary estate, excepted to the decree and appeals to this court. The widow assigns cross-errors, claiming that the will is void for uncertainty and that the estate should be distributed as intestate estate. The errors assigned question the rulings of the court in admitting parol evidence and in the construction given to the will. No proof is introduced showing that the testator had any knowledge that he had a relative in Germany.

It is clear that the extrinsic facts raise a latent ambiguity in this will with respect to the words describing the objects of the testator's bounty. A latent ambiguity is said to exist when that which seems certain and without ambiguity on the face of the deed or instrument, is rendered uncertain and ambiguous by something outside of the deed. Jarman on Wills, vol. 1, p. 429.

Reading this will and construing it by itself, it is plain and unambiguous. The implication would be that the testator had certain relatives in Germany to whom he desired to give his estate, and if upon inquiring it had developed that he had relatives in Germany whom he knew were there or had reasons to believe were there, no difficulty would exist in identifying the objects of his bounty. The ambiguity is brought into the will when we turn to the extrinsic facts and find that the testator had no relatives in Germany within his knowledge, but that he had a large number of relatives in the Canton of St. Galls, Switzerland. When by a resort to extrinsic evidence, a latent ambiguity is raised in the instrument, parol evidence is generally admissible to dissolve the ambiguity. Beach on Wills, sec. 350; Gilmer v. Stone, 120 U. S. 586; Patch v. White, 117 U. S. 210.

Ambiguities of this class usually exist where a plain and unambiguous designation of a person or thing in the instrument is found, by extrinsic evidence, to apply to two or more persons or things, in which case the authorities all agree that parol evidence of the testator's intention is receivable to identify the person or thing intended.

The above statement may be supported and its application illustrated by a few of the many cases to be found where it has been applied. In Lord Cheyney's case, 5 Rep. Ch. 69, it was decided that where the testator had two sons both baptized by the name of John, and conceiving the elder, who had been long absent, to be dead, devised his land to his son John, without any further particular description, when in fact the elder is living, the younger son could introduce parol evidence to prove his father's intention and that the testator believed the other to be dead.

In Careless v. Careless, 19 Ves. Jr. 600, the devise was "to my nephew, Robert Careless, son of my brother Joseph." The testator had two nephews named Robert Careless, neither of whom was a son of his brother Joseph. The parol evidence showed that one of the nephews was well known to the testator while the other was not and he

Giger v. Busch.

did not know that his unknown nephew bore the name of Robert. It was held the well known nephew was entitled to the legacy. It is to be noted in this case, the court entirely disregarded the superadded description, "son of my brother Joseph." Peters v. Porter, 60 How. Pr. 422, is a case where the testator devised certain lots "on the southerly side of Forty-ninth street near Eighth avenue," and it appeared she was only the owner of lots on the southerly side of 149th street near Eighth avenue, and evidence was admitted to show that owners of lots in that vicinity drop the "hundred" and designate the streets by the remaining figures; it was held the devise took the lots so misdescribed.

The illustration of a latent ambiguity explainable by parol evidence is found in Bradley v. Rees, et al., 113 Ill. 327. There the residuary clause devised all the remainder of the testator's lands "to the four boys." He had seven sons but the parol proof showed that three were men, married and had families of their own, and four were minors living with the testator. It was held that the testator intended the four minors to have the estate. We do not deem it necessary to go further into the discussion of the doctrine of latent ambiguities of this class or the admissibility of parol evidence in such cases to show the intent of the testator.

The case at bar is not an ambiguity arising from two or more persons or things answering the description in the will, but it is rather a case of a superadded description of the devisees which is false and may be rejected since enough remains of the designation to identify the devisees. If we read this clause of the will without the words "in Germany," which may be, we think, rejected altogether as not applicable to the devisees, who are designated as "my legal heirs," all ambiguity as to the class of persons who are to receive this estate is removed. The rule in relation to this class of latent ambiguities is that the addition of an unnecessary and inaccurate description to that which is otherwise sufficiently designated, will not defeat a devise. Par-

sons v. Parsons, 1 Ves. 267, note 3; Stockdale v. Bushby, 19 Ves. 383; Holmes v. Custance, 12 Ves. 280; Beach on Wills, sec. 328; 1 Jarman on Wills, 377.

Holmes v. Constance, *supra*, is a case apparently very much in point here. There the bequest was to the "children of Robert Holmes, late of Norwich and now of London, 100 pounds each." Robert Holmes had left Norwich when fourteen or sixteen years old and died in London several years before the will was made; it was held that the only surviving child of Robert was entitled to the legacy rather than the children of George Holmes formerly of Norwich and who resided in London at the time of the will. In this case, the words "now of London" were rejected, since the other words of the will identifies the beneficiaries.

Applying these rules of construction to the will before us, we are warranted in holding that the residuary clause was intended by the testator to give his estate otherwise not disposed of to those persons whom he designated by the term legal heirs; he no doubt supposed they all resided in Switzerland, but there is nothing from which we can deduce the conclusion that the testator intended by the use of the words, "in Germany," to limit the bounty to a certain class of heirs who were supposed to be in Germany. It is said, however, that the fact that Freida Giger was in Germany and that since she answers the description in the will, there is no ambiguity here. In reply to this contention, it is to be noted that the proof fails to show that testator knew that Freida was in Germany. There is nothing in the proof to show any special affection for her on the part of the testator or any reason why he might desire to make her the sole legatee of a large part of his estate, and lastly, the testator directs his executors to " divide and distribute" his estate to all his legal heirs. " Divide " and " distribute" are not apt words to employ when the estate is to go to one person.

The learned judge who tried this case at the Circuit, held that the words "in Germany," as used in the will, were

used in that broad sense having plain and explicit reference to the mass of people who are German in race and language and who may reside in the German Empire, Switzerland, Austria or Prussia, and decreed that all the heirs of Joseph Busch should take *per capita*, regardless of the place of their residence, provided it should be in one of the four countries above named.   There being no claim that any of the heirs of Joseph Busch reside in any other country than Switzerland, other than Freida Giger, it follows that the result reached here is the same as in the Circuit Court, although we rest our judgment on a different ground. The decree directing the executors to distribute the residuary estate to all the heirs of Joseph Busch is right and the same is affirmed.

*Affirmed.*