## McQUEEN v. STEPHENS et al.

### No. 4650.

Court of Civil Appeals of Texas. Amarillo.

Jan. 4, 1937.

Meade F. Griffin and Lucian Morehead, both of Plainview, for appellant.

Williams & Day, of Plainview, for appellees.

JACKSON, Justice.

From a judgment against appellant, he presents this appeal on an agreed case, and the material facts are as follows:

Lula McBurnett became the mother of a child, and shortly thereafter Lee Stephens,

on October 8, 1897, married the mother and under article 2581, R.C.S., the child, a girl, was legitimated. She was the only child born to this union, and was given the name of Paralee Stephens.

On October 30, 1900, Lula McBurnett Stephens, in the district court of Milam county, obtained a judgment annulling the bonds of matrimony between herself and husband, Lee Stephens. This decree gave the mother sole custody and control of Paralee, and the father never had any further association or correspondence with the child or his divorced wife, who shortly moved to Dallas, later married another man, and died in 1905 without any other child or children.

Paralee Stephens was married to J. E. McQueen on April 27, 1916, and to them on August 19, 1927, was born Justice Ellis McQueen, Jr. His mother was married but the one time; she died intestate October 7, 1931, and he is her only child. He prosecutes this suit and this appeal by his father as next friend.

He presents two alleged causes of action. In one he seeks to recover the portion of the estate of Lee Stephens, his grandfather, that he would have inherited had his grandfather died intestate. In the other he claims a part of the estate of his grand uncle, James L. Stephens, who died testate.

We will dispose first of the claim against the estate of his grandfather, Lee Stephens, who moved to Hale county in 1908 and on October 14, 1909, married Bobbie Hartley. To this union three girls were born, Juanita who is the wife of W. A. Taegel, and Louise Stephens and Jimmie Lee Stephens who are still minors but are represented by their duly qualified guardian, Mrs. Bobbie Stephens, who is a party to the suit. These three by the second wife, and Paralee by the first wife, are all the children of Lee Stephens. He made his will on the first day of September, 1921, and died on the 6th day of November, 1934, leaving a will which was admitted to probate and in which Mrs. Bobbie Stephens was nominated, appointed, and duly qualified as independent executrix. Appellant has made demand on the proper parties for a share in the estate of his grandfather, and a share in the estate of his grand uncle.

In his will Lee Stephens, the testator, gave to Bobbie Stephens, his second wife, one-half of his separate property, and the balance of his property, both separate and community, be bequeathed to their three children, Juanita, Louise, and Jimmie Lee, and "to such other child or children as may hereafter be born to me in wedlock, share and share alike." He stipulated that Bobbie Stephens should use and occupy their homestead in Plainview, which was community property, so long as she desired.

Lee Stephens pretermitted appellant in his will of September 1, 1921. The will was never changed, and no provision by settlement was made for appellant, who was born on August 19, 1927.

It is agreed that the material issue involved under this branch of the case is:

May the appellant recover any part of the estate of Lee Stephens, his deceased grandfather, by virtue of article 8292, as amended by Acts 1931, c. 196, § 2 (Vernon's Ann.Civ.St. art. 8292), and article 8294, notwithstanding his mother would have received no part of her father's estate if she had been living at the time of his death?

■ Under the agreed statement, it is admitted that appellant's mother was intentionally disinherited under the law by the will of her father. It follows, we think, inasmuch as the will was not changed after the birth of appellant, that he was not only pretermitted, but that his pretermission was intentional. In our opinion, the will and agreed statement authorized the implied finding by the trial court in his judgment that appellant was intentionally pretermitted. In fact, it is not claimed that his pretermission was inadvertent, or the failure to provide for him by settlement was unintentional.

Appellant's position is that the law writes into the will of Lee Stephens the provisions of articles 8292 and 8294, which, when correctly construed, entitled appellant, although a grandchild and his mother disinherited, to take as an afterborn child equally with the children of his grandfather by his second wife.

The part of article 8292 material to appellant's contention is as follows:

"If a testator having a child or children born at the time of making his last will and testament, shall at his death, leave a child or children born after the making of such last will and testament, the child or children so after born and pretermitted shall, unless provided for by settlement, succeed to the same portion of the father's estate as they would have been entitled to if the father had died intestate."

Article 8294 provides that:

"Under the name of 'children' as used in this title, are included descendants of whatever degree they may be, it being understood that they are only counted for the child they represent."

In order for appellant to recover any part of his grandfather's estate, he must successfully maintain that the words "child or children" used in article 8292, when interpreted by the provisions of article 8294, include "grandchild and grandchildren," and that although his mother was disinherited before she died, that he, as an afterborn grandchild, would inherit her portion of her father's estate.

Appellees suggest that if "child or children" in article 8292 means "grandchild or grandchildren," they would also include "great grandchild or great grandchildren," and that the same interpretation would apply to "child or children" in article 8291, as amended by Acts 1931, c. 196, § 1 (Vernon's Ann.Civ.St. art. 8291), and article 8293; hence, they say that the incongruity of appellant's contention may be demonstrated by substituting in said articles "grandchild or grandchildren" for the words "child or children."

In our view of the case, it is not necessary to pass on the effect to be given to the suggested substitution in construing the articles involved. However, if sound, such substitution renders appellant's construction of said statutes erroneous.

■ In both its popular and legal sense, it is generally held that "child or children" mean ones' immediate offspring, and do not extend to grandchildren. Schouler on Wills, Executors and Administrators (6th Ed.) Vol. 2, par. 973.

"As a general rule the word 'child' does not include a grandchild although the contrary is true where such is the clear intention of the testator. So, except where the intention of the testator is contrary, or otherwise the provision would be inoperative, grandchildren will not be deemed included in the term 'child.'" 69 C.J. p. 172, par. 1197. See, also, Bartlett v. Terrell et al. (Tex.Civ.App.) 292 S.W. 273.

It follows that if appellant's contention that "child or children" is to be interpreted also as "grandchild or grandchildren," that such construction is required by the language of article 8294.

Article 8292 is in effect section 4 of "An Act Concerning Wills," passed by the Republic of Texas in 1840; Gammel's Laws of Texas, vol. 2, p. 342; and article 8294 is in effect section 14 of the same act. Gammel's Laws of Texas, vol. 2, p. 344.

In this original act concerning wills, among other things, it was provided in section 13 (Gammel's Laws, Vol. 2, p. 344): "That no father or mother shall, by last will and testament, disinherit his or her child or children for any cause except * * *"; and then continues with the causes and conditions which allow a father or mother to disinherit his or her child or children.

Section 15 of said act provided in substance that any parent should not be prevented from the free disposition of onefourth of his or her property by will.

In 1856 the Legislature of the state of Texas passed "An Act Supplementary to the Act of January 28th, 1840, concerning Wills, and authorizing persons to dispose of their Estate by Will."

"Section 1. Be it enacted by the Legislature of the State of Texas, That all persons are hereby authorized and permitted to dispose of their own estate, real and personal, by will or otherwise, and that the thirteenth and fifteenth sections of the act of January 28th, 1840, entitled 'An Act concerning Wills', and the provisions of all other acts so far as they conflict with this, be, and the same are hereby repealed." Gammel's Laws of Texas, vol. 4, page 423.

■ Since the passage of the act in 1856 repealing the law of forced heirship, the Legislature has enacted no statute prohibiting a testator from disposing of his property as he may see fit, Bartlett v. Terrell, supra; and the ascertained intention of the testator must be given effect if the same does not contravene the law or public policy of the state. Houston et al. v. Schuhmann et al. (Tex.Civ.App.) 92 S.W.(2d) 1086; Bloch et al. v. Woellert et al. (Tex. Civ.App.) 90 S.W.(2d) 653.

■ The pretermission of appellant by his grandfather is not opposed to public policy, which, in principle, is that no one can lawfully do what tends to injure the public, or is against the public good. American National Ins. Co. v. Coates et al., 112 Tex. 267, 246 S.W. 356. Such pretermission was not in contravention of law unless articles 8292 and 8294 inhibit a testator from intentionally disinheriting an "after-born child" or after-born grandchildren and their descendants. Such an in-

terpretation of these statutes would continue in effect the forced inheritance law as to such "after-born child," "children," or their descendants.

While we do not find this precise question decided by the Texas courts, we do not assent to such construction since it would inhibit a testator from disposing of his property as he desired so long as he did not contravene the law or public policy. Most of the states have enacted statutes similar to those under consideration relative to the pretermission of an after-born child or children, or their issue, and provide generally that:

"Where a testator unintentionally fails to mention in his will or make provision for a child, either living at the date of the execution of the will or born thereafter, or the issue of a deceased child, shall share in the estate as though the testator had died intestate. The object of such statutes is to guard and provide against testamentary thoughtlessness, and to give the omitted child such a share in the estate of the intestate as he would have received had there been no will; and their effect is to render the will inoperative as to the omitted child." 18 C.J. p. 838, par. 67.

"Except under the statutes of a few states which are construed to allow a child unprovided for by will to take by descent, regardless of the intention of the testator, where a child, or the issue of a deceased child, is not mentioned in the will or provided for in the will or by settlement, it is entitled to take under the statutes relating to the rights of inheritance of pretermitted children when, and only when, the omission to mention or provide for the child was unintentional or the result of accident, mistake or inadvertence. In determining the question whether the omission was intentional or unintentional, which question is one of fact for the jury, it is immaterial that the testator's intention was influenced by misinformation as to extrinsic facts." 18 C.J. p. 841, par. 70.

In Volume 9, R.C.L., p. 41, par. 33, the rule is stated in this language:

"By statute it is usually provided in effect that when any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator as if he had died intestate. And similar statutes are found applying particularly to after-born children in connection with provisions abrogating the common law rule that marriage followed by birth of a child revokes a will, the provision commonly being that unless an intent to disinherit appears on the face of the will the after-born child takes a pro rata share with the other children. But it has been uniformly held that such provisions apply only to a case where a child or descendant is unknown or forgotten, or for some reason unintentionally overlooked, and are not limitations on the power of disposal, though the contrary was held under one of the older statutes which made no mention of the testator's intention."

■ The statutes involved do not contain the words "intentional" or "unintentional," but the use or omission of such words in the statute are not given conclusive control in determining the intention of the testator.

■ There is considerable variance among the courts as to the manner and method of determining whether a child or children were intentionally or unintentionally omitted from a testator's will, but when once ascertained in the manner required, the great weight of authority is that the intention of the testator is controlling, and should be given effect in construing statutes relative to the rights of an after-born child or children.

Article 8293 reads as follows:

"Every last will and testament made when the testator had no child living, wherein any child he might have is not provided for or mentioned, if at the time of his death he shall leave a child, or leave his wife enceinte of a child which shall be born, shall have no effect during the life of such after-born child, and shall be void, unless the child die without having been married and before he shall have attained the age of twenty-one years."

This is the same language contained in article 5345 of the Revised Statutes of Texas 1895.

In construing this article, Judge Ramsey of the Supreme Court, in Pearce v. Pearce, 104 Tex. 73, 134 S.W. 210, 214, after reviewing the authorities from several states, uses this language:

"It should be remembered in this case that, as we have seen, the property in question was the separate estate of Mrs. Pearce. Under the law she might deed same, when joined by her husband, to any person for any consideration satisfactory to her, and

no child or children could complain. Under the law she is authorized to direct the disposition of the same by will, either to the natural objects of her bounty, or to dedicate it to charity, or to convey it to strangers. And her right so to do cannot be abridged or denied unless inhibited under a fair construction of the statute relied on. We think the true construction of the word 'mentioned,' in article 5345, is not designation by name, but means referred to or having in mind, and as indicating that the child was in her memory, and that her will was made with reference to its possible existence and early birth, and that it was not overlooked or forgotten. In other words, the true interpretation of the statute is that it should appear either that provision should be made for the child, or that, if no provision was made for such child, it should appear from the will interpreted in the light of all the circumstances that the failure to make such provision was not accidental, due to inadvertence or oversight."

■ It is held in Bartlett v. Terrell, supra, that article 8294 refers to the three articles immediately preceding it, one of which is 8293. Article 8294 bears the same relation to article 8292 and article 8293, and the principles of law contained in the last two named articles are so analogous that in our opinion the law announced in Pearce v. Pearce, supra, is decisive against appellant's contention.

The judgment denying appellant a recovery under the provisions of the will of his grandfather is affirmed.

We pass now to a consideration of appellant's claim that he is entitled, under the will of his grand uncle, James L. Stephens, to a part of such testator's estate, and the agreed facts are that:

Lee Stephens and James L. Stephens were full brothers and were "exceptionally intimate, conducted practically all their business jointly, were jointly interested in practically every trade made by either or both of them, were equally interested in practically all property owned by them or either of them at any time."

The family of James L. Stephens consisted only of Amanda, his wife, and himself, and for many years prior to his death he and his wife had their home on a lot in the city of Plainview, adjoining the lot on which Lee Stephens and his family, consisting of his second wife and their children, had their home, and the two families "were very intimate."

James L. Stephens executed his will on November 2, 1917, and the provisions thereof here involved are as follows:

"Second: I give, devise and bequeath unto my beloved wife, Amanda Stephens, of Hale County, Texas, all of my undivided one-half interest in and to all real estate owned by the community estate of myself and wife until she shall die or marry, and when my wife, Amanda, shall die or marry I direct that said real estate shall pass to the sons and daughters of my brother, Lee Stephens, in fee simple and share and share alike. Said land in which my community interest is herein devised to Amanda Stephens being all of the real estate which I claim or own which does not lie within Milam County, Texas.

"Third: I give, devise and bequeath unto the sons and daughters of my brother, Lee Stephens, namely Juanita Stephens and Louise Stephens, and to such other child or children as shall hereafter be born to said Lee Stephens, in fee simple and share and share alike, all of my undivided one-half interest in the personal property belonging to the community estate of myself and wife, Amanda Stephens; and all of my interest in and to all of my land and real estate located and situated in Milam County, Texas. Said land in Milam County, Texas being my separate property.

"I also give, devise and bequeath unto the said sons and daughters of my brother, Lee Stephens, including those which may hereafter be born to him, all of the fee in and to my interest in all real estate owned by the community estate of myself and wife, Amanda Stephens, subject, however, to the estate hereinbefore devised to my wife, Amanda Stephens, in said real estate.

"Fourth: I will and direct that my community real estate be held undivided until my wife, Amanda Stephens, shall die or marry, and that my said wife, Amanda Stephens, shall have the use, rents, hire, control and management of my said community real estate until she shall die or marry and upon her death or marriage that all of her right in and to my community real estate shall cease, and that the same shall descend and pass to the said sons and daughters of my brother, Lee Stephens, immediately in fee simple."

James L. Stephens died on the 19th of November, 1920, his will was duly probated, and Lee Stephens was regularly appointed independent executor thereof.

Amanda Stephens made her will in 1929, and by its terms devised all of her property to Juanita, Louise, and Jimmie Lee Stephens. She died May 28, 1933, and her said will was duly probated.

It is conceded that the testator by his will bequeathed his half interest in the personal property belonging to the community estate and devised his separate real estate in fee simple, share and share alike, to Juanita Stephens, Louise Stephens, and such "other child or children as shall hereafter be born to Lee Stephens." Jimmie Lee Stephens was born after the execution of the will under consideration. It is also admitted that the testator devised to his wife, Amanda, all of his community real estate, with the rents, hire, control, and management thereof, until her death or remarriage. It is manifest that upon the occurrence of either of such events said community real estate passed in fee simple either to all the children of Lee Stephens, including Paralee by the first wife, or to the children only of the second marriage which, under the record, are Juanita, Louise, and Jimmie Lee.

Both appellant and appellee contend primarily that the will is not ambiguous, and this contention we think is correct, but as disclosed by the record in any event the relationship of the brothers and their families does not overcome the intention of the testator as disclosed by the language of his will. Simkins' Administration of Estates in Texas (3d Ed.) p. 510, par. 371.

The cardinal rule of testamentary construction is to ascertain and give effect to the intention of the testator, not what is in his mind, but the intention expressed in the language of the will, and all rules of construction are designed to effectuate that purpose. This intention is to be gleaned from the entire will, and not from detached sections or clauses thereof, and separate clauses or provisions, if inconsistent or repugnant, shall be harmonized if possible to form one consistent whole.

It is evident that the second section of the will considered alone includes Paralee, and the language therein expresses with certainty the intention of the testator to include her, and she having died, her son, the appellant, was vested with her interest in said community real estate under article 8295, unless section 2 is meaningless, void, and not to be considered as a part of the will or in ascertaining the intention of the testator.

If said section is invalid and eliminated from the will because repugnant and inconsistent with the last paragraph of the third section and the fourth section, the community real estate passed to Juanita, Louise, and Jimmie Lee, the children of Lee Stephens by his second wife, upon the death or remarriage of Amanda Stephens, the wife of James L. Stephens.

"In the construction of wills the object is not to seek flaws and declare them invalid, but to sustain them if legally possible, and the presumption is that the testator intended a lawful rather than an unlawful thing." 28 R.C.L. p. 206, par. 167.

"In construing the will, all its provisions should be looked to, for the purpose of ascertaining what the real intention of the testatrix was; and, if this can be ascertained from the language of the instrument, then any particular paragraph of the will which, considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument." McMurry et al. v. Stanley et al., 69 Tex. 227, 6 S.W. 412, 413.

"Provisions apparently conflicting must be reconciled if it be possible to do so, and * * * the intention of the testator must be given effect where it contravenes no inflexible rule of law. In wills, as in all other written instruments, where the language admits of two constructions, one of which would render certain provisions void, and under the other of which all would be valid, the latter should prevail." Dulin v. Moore, 96 Tex. 135, 70 S.W. 742, 743. See, also, Martin et al. v. Dial et al. (Tex.Com. App.) 57 S.W.(2d) 75, 89 A.L.R. 571; Bittner et al. v. Bittner et al. (Tex.Com.App.) 45 S.W.(2d) 148; Stephens v. Dennis et al. (Tex.Civ.App.) 72 S.W.(2d) 630 (writ refused).

"The rule which sacrifices the former clause in a will because inconsistent with the latter one is never applied except upon failure to give such construction as renders the whole will effective and allows each provision to stand." 28 R.C.L. p. 208, par. 168.

The word "said" is a relative word, "if there is a question as to which of the antecedent things or propositions specified is referred to, it is generally held to refer to the last of such antecedent propositions or things, or to the next antecedent; but such rule will not be strictly applied where it would result in destroying or materially altering the intention expressed in the whole context of the language under considera-

tion; and the word will be referred to the proper antecedent." 54 C.J. 1118.

Under this rule the word "said" used in the last paragraph of the third section, and also in the fourth section, does not necessarily refer to the words "sons and daughters" as used in the first paragraph of the third section.

The second section and the last paragraph of the third section and the fourth section all related to the same property, the interest of James L. Stephens in the community real estate, and in determining the intention of the testator.

"All of the provisions of the will relating to the same property or the same contingencies should be construed together." 69 C. J. p. 108, par. 1153. See, also, Thurmond v. Thurmond, 190 Ky. 582, 228 S.W. 29; Martin v. Erdman et al., 124 Md. 668, 93 A. 212; Krause v. Krause, 113 Neb. 22, 201 N.W. 670.

"It is an established rule of construction applicable to wills that words or clauses of sentences, or even whole paragraphs, may be transposed to any extent with a view to show the intention of the testator." Darragh v. Barmore (Tex.Com.App.) 242 S.W. 714, 717. To the same effect are the holdings in Haupt et al. v. Michaelis (Tex.Com. App.) 231 S.W. 706; Hawes v. Foote, 64 Tex. 22; 69 C.J. p. 110, par. 1155.

If we transpose the first paragraph of the third section of the will so as to precede the second section, or so as to follow the fourth section, each of the provisions of the will pertaining to the community real estate of the testator will succeed each other. The word "said" will refer to "sons and daughters," mentioned in the second section, all apparent repugnance between the different provisions will disapppear, all the provisions of the testament will be given effect, and the intention of the testator will not be questioned.

The judgment of the trial court refusing appellant a recovery of any interest in the community real estate of his grand uncle, James L. Stephens, is reversed and here rendered, decreeing him a recovery in the community real estate of the testator, share and share alike with the three children of Lee Stephens by his second marriage.

Affirmed in part and reversed and rendered in part.

MARTIN, J., not sitting.